IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JANE MOE,                                          )
                                                   )
                    Plaintiff,                     )
                                                   )
          v.                                       )    Civil Action No. 20-1468
                                                   )
LELAND DUDEK,[1]                                   )
*Acting Commissioner of Social Security*,          )
                                                   )
                    Defendant.                     )

O R D E R

AND NOW, this 31st day of March, 2025, upon consideration of the parties'

cross-motions for summary judgment,[2] the Court, upon review of the Commissioner of Social

Security's final decision denying Plaintiff's claim for disability insurance benefits ("DIB") under

Subchapter II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, finds that the Commissioner's

findings are supported by substantial evidence and, accordingly, affirms.  *See* 42 U.S.C. §

405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153-54 (2019); *Jesurum v. Secretary of U.S. Dep't*

*of Health & Human Servs*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d

1211, 1213 (3d Cir. 1988)).  *See also Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990)

(if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal

---

[1]    Leland Dudek is substituted as the defendant in this matter pursuant to Federal Rule of
Civil Procedure 25(d) and 42 U.S.C. § 405(g).

[2]    Per Plaintiff's response (Doc. No. 69) to the Hon. Alan Bloch's July 24, 2024 Order
(Doc. No. 68), the Court is construing Plaintiff's Miscellaneous Motion for Her Opening Brief
(Doc. No. 55) and Plaintiff's Opening Brief (Doc. No. 56), along with the exhibits thereto, as
Plaintiff's motion for summary judgment in this matter.

court may neither reweigh the evidence, nor reverse, merely because it would have decided the

claim differently) (*citing Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).[3]

---

[3]    Plaintiff is proceeding *pro se* in this case, and *pro se* pleadings are held to less stringent standards than formal pleadings drafted by lawyers.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Holley v. Department of Veterans Affairs*, 165 F.3d 244, 247 (3d Cir. 1999).  As such, the Court has carefully reviewed and considered all of Plaintiff's filings in this case and the issues she has raised therein.  It has also liberally construed these documents so as to give Plaintiff's arguments the broadest reasonable reading possible.  Nonetheless, while Plaintiff has clearly put a great deal of work into her case and has done a credible, good-faith job of explaining her position, the Court will affirm the findings of the Administrative Law Judge ("ALJ").

Plaintiff raises three broad categories of arguments: (1) that the ALJ's decision is not consistent with the law and/or supported by substantial evidence; (2) that the ALJ, the Appeals Council, and other SSA personnel were biased against her and that she was therefore denied due process; and (3) that a remand is warranted based on new evidence not before the ALJ.  For the reasons set forth herein, the Court finds no merit as to any of these arguments.

In regard to the first argument, it is important to understand the limited scope of the Court's authority in this matter.  42 U.S.C. § 405(g) permits a district court to review a final decision of the Commissioner of Social Security.  However, judicial review is based solely on the pleadings and the transcript of the record, and the scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact.  *See* 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues and reviews the findings of fact of the ALJ to determine whether they are supported by substantial evidence).  Therefore, the Court here is limited to reviewing the record before it to assure itself that it adequately supports the ALJ's decision that Plaintiff was not disabled during the relevant time period.  Evidence that was not before the ALJ cannot be considered by a district court in its determination of whether or not the ALJ's decision was supported by substantial evidence.  *See Matthews*, 239 F.3d at 594; *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 360 (3d Cir. 2011).

The Court first notes that Plaintiff's claims that the ALJ did not apply the proper legal standards are without merit.  Plaintiff may disagree with the decisions the ALJ made, but she cannot establish that he did not follow the appropriate regulations.  The ALJ, in formulating Plaintiff's residual functional capacity ("RFC") and in otherwise considering whether she was disabled, considered the objective medical evidence, including medical imagining date, clinical findings, and mental status examination findings; the history and efficacy of Plaintiff's treatment; and her activities of daily living, including her education and part-time employment.  These were all appropriate factors; indeed, they are part of what an ALJ is required to consider.  *See* 20 C.F.R. § 404.1529(c)(2), (3); *Russo v. Astrue*, 421 Fed. Appx. 184, 188-89 (3d Cir. 2011); SSR 16-3p, 2016 WL 1119029, at *5 (S.S.A. 2016); *Miller v. Comm'r of Soc. Sec.*, 524 Fed.

Appx. 191, 194 (6th Cir. 2013) (stating that "the ALJ did not err by considering Miller's ability to maintain part-time employment as one factor relevant to the determination of whether he was disabled"); *Mack v. Colvin*, No. CV 15-688, 2016 WL 6039047, at \*4 (W.D. Pa. Oct. 14, 2016) (holding that the ALJ properly considered Plaintiff's part-time work).   Again, Plaintiff may disagree with the conclusions drawn by the ALJ from this evidence, but on this record she cannot successfully argue that it was a mistake of law to consider it.

The ALJ also considered and relied upon several medical expert opinions and did so pursuant to and consistent with the proper and applicable regulations.  Because Plaintiff's claim was filed before March 27, 2017, the ALJ properly applied the older version of the regulations in evaluating the medical opinion evidence, specifically 20 C.F.R. § 404.1527. As such, he assigned "weight" to the opinions rather than determining their "persuasiveness," as required under the language of the regulations applicable to newer cases. *See* 20 C.F.R. § 404.1520c(a). *See also* 82 Fed. Reg. 5844-01, at 5853 (Jan. 18, 2017).   His analysis was consistent with and considered the factors set forth in Section 1527, including examining relationship, supportability, and consistency.  Moreover, while Plaintiff points out that some of the opinions were rendered long before the record was complete, and therefore without the benefit of much of the later developed evidence, the fact that the state reviewing agents' opinions were rendered before other evidence became available does not mean the ALJ was prohibited from giving them significant weight. *See Chandler*, 667 F.3d at 361 ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it.").  And importantly, the ALJ himself was aware of this later evidence and considered it in making his determinations.

Plaintiff further suggests that an error in law was made in that the ALJ gave equal weight to the opinion of Stephen Pacella, Ph.D., the consultative examiner (R. 2467-75), and Kerry Brace, Psy.D., the state agency psychological consultant (R. 327-33) without reconciling the differences between the opinions.  (Doc. No. 56, pp. 1-10).  Plaintiff is correct, of course, that the ALJ assigned "significant weight" to each of these opinions.  (R. 156).  However, whatever differences existed between the opinions of Dr. Pacella and Dr. Brace were resolved in Plaintiff's favor.  For instance, Dr. Pacella opined that Plaintiff was markedly limited in all aspects of her ability to interact socially (R. 2474), while Dr. Brace opined that Plaintiff had only moderate limitations in that regard (although Dr. Brace did find her markedly limited in her ability to interact appropriately with the general public).  (R. 328, 332). Nonetheless, although the ALJ did afford significant weight to each opinion, he ultimately found that Plaintiff was markedly limited in her ability to interact with others (R. 151), implicitly agreeing with the more limiting opinion of Dr. Pacella.  The ALJ also included a number of significant restrictions in regard to Plaintiff's social functioning in the RFC, including that she could work in proximity to co-workers, but could have only occasional interaction with them and no tandem work and that she was limited to incidental or cursory contact with the public and to positions working with things rather than people.  He also accounted for Dr. Pacella's opinion that Plaintiff was markedly limited in her ability to respond appropriately to usual work settings and to changes in a routine work setting by restricting her to a low stress workplace with few decisions, judgments, or changes in routine work setting.  (R. 153).

Plaintiff suggests that Dr. Pacella's opinion can also be read to provide that she is markedly limited in her ability to adapt or manage herself (Doc. No. 56, pp. 9-10), which – along with interacting with others – is one of the four considerations under Section B of Listings 12.06, 12.13, and 12.15, 20 C.F.R. Part 404, Subpart P, Appendix 1, at Step Three of the sequential analysis. She asserts that this would provide the second marked limitation needed to satisfy the listings, which would direct a finding of disability. She contends that this "inconsistency" between the opinions of Dr. Pacella and Dr. Brace therefore had to be addressed by the ALJ and that it was legal error for him to fail to do so. A plain reading of Dr. Pacella's opinion, though, dispels this notion. Dr. Pacella, unlike Dr. Brace, did not purport to specifically determine whether Plaintiff's mental conditions satisfied the B criteria of Listings 12.06, 12.13, and 12.15. Rather, the form attached to his assessment setting forth the degree of Plaintiff's limitations was broken into several sections. The first contained his opinions as to capabilities correlating with the ability to understand, remember, and apply information, and Dr. Pacella's opinions as to Plaintiff's level of functioning as to these capabilities ranged from no limitation to mild to moderate limitation. (R. 2473). In turn, the ALJ found her to have a mild limitation in this area of functioning in regarding to Listings 12.06, 12.13, and 12.15 at Step Three. The next section of Dr. Pacella's form contained activities correlating with Plaintiff's ability to interact with others. As noted, Dr. Pacella found Plaintiff to have marked limitation in all such areas, and the ALJ agreed and found Plaintiff to have marked limitation in this area of functioning at Step Three. (R. 151, 2474). Accordingly, there are no clear inconsistencies in regard to these two sections.

It is the third section of the form that correlated with the final two Part B criteria: adapting and managing oneself and concentrating, persisting, and maintaining pace. Although Dr. Patella clearly marked that these capabilities were impacted by Plaintiff's impairments, he did ***not*** opine as to any specific degree of limitation, *i.e.*, mild, moderate, marked, or extreme. (R. 2474). The ALJ, consistent with Dr. Brace, found that Plaintiff had a moderate limitation in these areas. (R. 151-52, 328). Given the vague and general nature of Dr. Pacella's opinion on this point, the ALJ's finding was in no way inconsistent with Dr. Pacella's assessment. Indeed, there really is nothing in Dr. Pacella's opinion that is inconsistent with the ALJ's findings, and to the extent there are any inconsistencies with Dr. Brace's opinion, the ALJ's findings were more restrictive. In fact, there were no medical opinions expressly suggesting more restrictive limitations than those found by the ALJ. As such, the Court finds that the ALJ adequately considered these opinions to which he assigned "equal" weight.

Plaintiff's argument that substantial evidence does not support the ALJ's findings is essentially premised on her own assessment of the record facts. Plaintiff, in a fairly comprehensive manner, sets forth her own explanation of what the evidence shows and invites the Court to agree with her. However, if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently. *See Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); *Berry*, 738 F. Supp. at 944 (*citing Cotter*, 642 F.2d at 705). As noted, Plaintiff highlights evidence that she argues leads to a contrary conclusion, but "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v.*

*Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 764 (3d Cir. 2009). Here, substantial evidence supports the ALJ's determinations, as he himself discussed at length, especially in light of the United States Supreme Court's reminder that the threshold for meeting the substantial evidence standard "is not high." *Biestek*, 139 S. Ct. at 1154.

Plaintiff is correct on one point – the ALJ potentially erred in finding that she could perform the job of order caller as part of his findings that she could perform work that exists in significant numbers in the national economy. That position has an identification number pursuant to the *Dictionary of Occupational Titles* ("DOT") of 209.667-014. The companion document to the DOT – the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO") – indicates that this job requires frequent talking, whereas Plaintiff's RFC limited her to "only occasional verbal communication via such methods as phone or face to face conversation." (R. 152). This would appear to create a potential unresolved conflict between the requirements of the job as set forth in the DOT and SCO and Plaintiff's functional capacity. Unfortunately for Plaintiff, even assuming the ALJ erred in this way, remand is not warranted.

The position of order caller requires frequent talking, but the other two jobs the ALJ found Plaintiff able to perform – marker (DOT No. 209.587-034) and addresser (209.587-010) – do not generally require any talking per the SCO. Those two jobs (which comprise 60,000 jobs nationally) would therefore remain available to Plaintiff. (R. 158). While the Commissioner bears the burden of demonstrating that the claimant can perform jobs existing in the national economy at the fifth step of the sequential analysis, *see Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014), this burden is satisfied if the ALJ identifies at least one occupation with a significant number of jobs in the national economy that the claimant can perform. *See Wilkinson v. Comm'r of Soc. Sec.*, 558 Fed. Appx. 254, 256 (3d Cir. 2014) (citing 20 C.F.R. §§ 404.1566(b), 416.966(b)). Therefore, a finding that Plaintiff could perform one of the 60,000 marker and/or addresser jobs in the national economy is sufficient to satisfy the Commissioner's burden at Step Five, even without consideration of the order caller position.

The second aspect of Plaintiff's position is that the ALJ, the Appeals Council, and other SSA personnel were biased against her and that she was therefore denied due process. At the outset, the Court notes that Plaintiff cannot bring such claims, as she asserts (Doc. No. 55, pp. 12-13), pursuant to *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971). First, her Complaint does not raise an action pursuant to *Bivens* nor she does she plead the requisite elements for such an action. More importantly, however, the Supreme Court has made it clear that "the improper denial of Social Security disability benefits, allegedly resulting from violations of due process by government officials who administered the federal Social Security program," cannot give rise to a *Bivens* action. *Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988). Indeed, sovereign immunity and the language of 405(h) preclude such constitutional claims in the context of an appeal under Section 405(g). *See N'Jai v. Soc. Sec. Admin. Comm'r*, No. CV 18-1616, 2019 WL 652842, at *4 (W.D. Pa. Feb. 15, 2019) (citing *Agcaoili v. Thayer*, 365 Fed. Appx. 372, 374–75 (3d Cir. 2010); *Cassell v. The Social Security ADM*, 677 Fed. Appx. 98, 99 (3d Cir. 2017)).

Nonetheless, courts have long recognized that "due process requires that any hearing afforded [a Social Security disability] claimant be full and fair." *Ventura v. Shalala,* 55 F.3d 900, 902 (3d Cir.1995). This standard is violated where the ALJ displays a bias or animus against a claimant or a claimant is deprived of the opportunity to present evidence. *See id.* at 902–03. *See also Bordes v. Comm'r of Soc. Sec.*, 235 Fed. Appx. 853, 857-58 (3d Cir. 2007). The burden of demonstrating a violation of due process rests with the party raising the objection, and such party "must show that the behavior of the ALJ was 'so extreme as to display clear inability to render fair judgment.'" *Roberson v. Colvin*, Civ. No. 13-1183, 2014 WL 4258306, at *4 (W.D. Pa. Aug. 26, 2014) (citing *Liteky v. United States*, 510 U.S. 540, 551 (1994)). This standard is a very difficult one to meet; as Plaintiff recognizes, the Court presumes "that the hearing officers are...unbiased." *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). "That presumption is overcome only if it is shown that the ALJ displayed 'deep-seated and unequivocal antagonism' that is 'so extreme' that fair judgment is impossible." *Jamar v. Colvin*, No. CV 15-212-E, 2016 WL 4875292, at *1 n.1 (W.D. Pa. Sept. 14, 2016) (quoting *Liteky*, 510 U.S. at 551, 556). The mere fact that an ALJ displays "impatience, dissatisfaction, annoyance, or even anger does not establish bias." *Ball v. Comm'r of Soc. Sec.*, No. CV 18-159-E, 2019 WL 4722492, at *1 n.1 (W.D. Pa. Sept. 26, 2019) (quoting *Liteky*, 510 U.S. at 555-56).

In addition, in the ordinary course, the claimant "must bring any objections to the attention of the ALJ, and the ALJ shall decide whether to continue the hearing or withdraw." *Ventura,* 55 F.3d at 902. *See also* 20 C.F.R. § 404.940. Thus, Plaintiff should have, at the administrative hearing, "alleged that the ALJ was prejudiced and requested that he disqualify himself." *Ventura*, 55 F.3d at 902. The Court is cognizant that Plaintiff has proceeded *pro se* at all times relevant and therefore will not find her to have waived a bias claim by failing to raise it in the manner specified in the regulations. Regardless, the Court finds that no valid bias claim exists here.

Part of the basis for Plaintiff's claim of bias is that the ALJ acted aggressively toward her, shook his head and threw up his hands, and looked concerned and glared at her during the administrative hearing on February 28, 2019. (Doc. No. 55, pp. 2-3 n.3). The transcript contains no evidence of any such behavior (R. 269-97), which Plaintiff asserts was due to the fact that the bias was "visible not audible." (Doc. No. 55, p. 3 n.3). However, even crediting Plaintiff's interpretation of the events, as noted above, an ALJ's "impatience, dissatisfaction, annoyance, or even anger does not establish bias." *Ball*, 2019 WL 4722492, at *1 n.1. Therefore, actions, particularly ones that are prone to a subjective understanding, that arguably demonstrate frustration by the ALJ are not sufficient to establish bias. Moreover, the transcript contains no evidence that Plaintiff interpreted any actions by the ALJ as aggressive in the moment. As noted, the Court is not finding that Plaintiff's failure to raise bias at the hearing waived her right to raise it now; however, her own unremarkable reactions to the ALJ's supposedly egregious conduct and her failure to make any note of such behavior on the record is part of the complete lack of *any* evidence from the transcript demonstrating the type of extreme unequivocal antagonism that is needed to show bias. Therefore, even if the Court were to fully credit Plaintiff's account of the behavior at the hearing, at best it would show a possibly ornery ALJ; it would not provide the type of evidence needed to show that the ALJ was biased against her.

6

The second basis for Plaintiff's claim of bias is that the record contains errors, which she characterizes as the "spoliation" of evidence. She does point to a few pages, out of a particularly long administrative record, containing errors in omitting evidence that had been submitted. She points, for example, to a place where a couple pages of her brief to the Appeals Council were repeated, replacing the pages that properly should have been there. (Doc. No. 56-2, Ex. 2; R. 1187). She also identifies a 2-page correspondence attaching a general medical article on "The exacerbating effect of insulin-induced hypoglycemia on spontaneous peripheral neuropathy in aged B6C3F1 mice" (*Id.*, Ex. 1), and a 4-page faxed surgical pathology report dated August 9, 2019 (*Id.*, Ex. 3) that the SSA appears to have received but not included in her file. (Doc. No. 55, pp. 4- 6). While such errors certainly may have (and appear likely to have) occurred, a few errors in copying documents over the course of preparing a transcript that is nearly 2,500 pages long certainly does not show extreme unequivocal antagonism on the part of any SSA personnel. Mere error does not establish bias. *See Chantal v. Berryhill*, No. 2:16-cv-575, 2018 WL 585538, at *11 (D. Me. Jan. 29, 2018). Plaintiff herself acknowledges that there was nothing facially noteworthy about the omitted material, and none contains pertinent information not conveyed elsewhere in the record in some form. Compiling an administrative transcript of this size is no simple process even when a claimant has a lawyer; given Plaintiff's decision to represent herself, evidence of a few imperfections in this process is not unreasonable. At the very least, it certainly is not, without significantly more, sufficient to overcome the strong presumption against bias.

Plaintiff does, of course, also contend that an SSA employee implied that there were as many as 500 pages missing from her transcript. (Doc. No. 55, p. 7-9). However, this entire claim appears to be based on a conversation regarding a different application for benefits Plaintiff filed after bringing this case. The language used during that conversation was vague and did not demonstrate any purposeful behavior on the part of the SSA to remove evidence from Plaintiff's administrative record. Moreover, there is no evidence, and indeed, Plaintiff does not even speculate, as to what evidence was contained in those 500 allegedly missing pages. Accordingly, Plaintiff's allegations of dirty looks, a couple of pages missing from a very large transcript, and a vague suggestion that there may be more information missing simply does not and cannot establish bias on behalf of the ALJ or any other SSA employee.

Finally, Plaintiff asserts that this case should be remanded for consideration of the vast amount of evidence not presented to the ALJ but presented to the Appeals Council. As the Court discussed above, it cannot consider evidence that was not before the ALJ in its determination of whether or not the ALJ's decision was supported by substantial evidence. *See Matthews*, 239 F.3d at 594; *Chandler*, 667 F.3d at 360. Accordingly, the Court cannot rely on any records that were not part of the administrative record upon which the ALJ based his decision in making its determination here, even if those documents were submitted to the Appeals Council. It can, though, consider whether this new evidence demonstrates the need for the case to be remanded under sentence six of 42 U.S.C. § 405(g), which provides, in relevant part:

> [The court] may at any time order additional evidence to be taken
> before the Commissioner of Social Security, but only upon a
> showing that there is new evidence which is material and that there

> is good cause for failure to incorporate such evidence into the
> record in a prior proceeding.

To remand a case based on new evidence which was not before the ALJ, the Court must determine that the following criteria have been met: First, the evidence must be new and not merely cumulative of what is in the record. Second, the evidence must be material. This means that it must be relevant and probative, and there must be a reasonable possibility that the new evidence would have changed the outcome of the determination. Third, the plaintiff must demonstrate good cause for not having incorporated the new evidence into the administrative record. *See Matthews*, 239 F.3d at 594; *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984). Plaintiff cannot meet this burden.

The Court will assume for these purposes that all of the evidence submitted by Plaintiff to the Appeals Council is "new" in the sense that it is not merely cumulative of what is already in an already vast record and that Plaintiff had good cause for not incorporating the evidence into the administrative record prior to the ALJ's decision on May 20, 2019. Nonetheless, none of it is material, and remand is therefore unwarranted. "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of [a] previously non-disabling condition." *Szubak*, 745 F.2d at 833; *see also Rainey v. Astrue*, Civ. No. 11-125-E, 2012 WL 3779167, at *8 (W.D. Pa. Aug. 31, 2012). Plaintiff acknowledges that much of the evidence submitted to the Appeals Council came into existence after the ALJ's decision but argues that it all pertains to conditions that were present before May 20, 2019. This may be so, but it is not enough to support a sentence six remand based on new evidence.

The issue is not whether Plaintiff had been or could have been diagnosed with additional conditions prior to May 20, 2019, but what functional limitations the conditions caused ***at that time***. *See Walker v. Barnhart*, 172 Fed. Appx. 423, 426 (3d Cir. 2006). The records submitted by Plaintiff may relate to conditions that existed during the relevant time period, but none are probative as to Plaintiff's functional limitations during that period. For instance, Plaintiff submits evidence that she was diagnosed with papillary thyroid carcinoma in 2020, but that the evidence shows that the condition existed at least as far back as April of 2019. However, even in 2020, Plaintiff was asymptomatic, and her prognosis was excellent. (R. 15, 35). Accordingly, Plaintiff's cancer may certainly impact a finding as to whether she is disabled going forward, but the evidence does not support that the condition caused functional limitations prior to May 20, 2019. The same is true for the evidence involving less serious medical conditions submitted to the Appeals Council. As such, there is not a reasonable possibility that the evidence would have changed the outcome of the ALJ's determination.

In sum, the Court finds that the ALJ applied the proper legal standards and that substantial evidence supports his findings. It further finds that there is insufficient evidence to establish bias or denial of due process. Finally, it finds that none of the new evidence presented by Plaintiff warrants a sentence six remand. The Court will therefore affirm.

9

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. Nos. 55, 56) is DENIED and that Defendant's Motion for Summary Judgment (Doc. No. 60) is GRANTED as set forth herein.

s/Mark R. Hornak
United States District Judge

ecf:        Counsel of record

cc:         Jane Moe
            P.O. Box 201
            Homestead, PA 15120